**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONNIE VAUGHN, | : | |
| Petitioner | : | |
| | : | No. 1:16-cv-01072 |
| v. | : | |
| | : | (Judge Kane) |
| UNITED STATES PAROLE | : | |
| COMMISION, <u>et</u> <u>al.</u>, | : | |
| Respondent | : | |

**<u>MEMORANDUM</u>**

Petitioner, Ronnie Vaughn ("Vaughn"), an inmate currently confined at the United States

Penitentiary at Canaan, in Waymart, Pennsylvania, filed the instant petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2241 on June 6, 2016. (Doc. No. 1.) Vaughn filed an amended

petition on December 28, 2016. (Doc. No. 10.) Vaughn challenges the decision of the United

States Parole Commission ("USPC") to deny him parole and claims that the USPC violated his

rights under the Ex Post Facto and Due Process clause. (<u>Id.</u>) Respondent maintains that the

denial of Vaughn's petition is appropriate because his claims lack merit, he does not possess a

liberty interest in parole release, and the USPC's decision to deny Vaughn parole is not judicially

reviewable. (Doc. No. 14.) Having been fully briefed, this matter is ripe for disposition. For the

reasons that follow, the Court will deny Vaughn's petition for a writ of habeas corpus.

**I.     BACKGROUND**

Vaughn is serving a life term of imprisonment with parole eligibility after twenty years,

imposed by the District of Columbia Superior Court on December 6, 1996, for second degree

murder, assault with a dangerous weapon, possession of a firearm during a crime of violence,

and carrying a pistol without a license. (Doc. No. 14, Ex. 1, Sentence Monitoring Computation

Data.) The factual background of Vaughn's claims would be incomplete without first noting

significant changes to the parole determination process for District of Columbia Code offenders. Originally, the authority to make parole determinations for D.C. Code offenders was vested in the District of Columbia Parole Board ("D.C. Board"). The D.C. Board's decisions were guided by regulations adopted in 1985 and published in the District of Columbia Municipal Regulations in 1987 ("1987 Regs."). See D.C. Mun. Regs. tit. 28, §§ 100 et seq. (1987) (repealed 2000). The 1987 Regs. were further clarified by Policy Guidelines adopted by the D.C. Board on December 16, 1991 ("1991 Guidelines"). See Sellmon v. Reilly, 551 F. Supp. 2d 66, 85 (D.D.C. 2008).

In 1997, Congress overhauled the District of Columbia's government, including the parole system. See National Capital Revitalization and Self-Government Improvement Act, Pub. L. No. 105-33, § 11231, 111 Stat. 712, 745-46 (codified at D.C. Code § 24–131). Effective August 5, 1998, the D.C. Board was abolished and its jurisdiction over parole decisions for D.C. Code felons was transferred to the USPC. Id.; see Taylor v. Craig, Civ. No. 05-00781, 2009 WL 900048, at *2 (S.D.W. Va. Mar. 24, 2009).

Vaughn became eligible for parole on November 22, 2015. (Id.) On June 15, 2015, the USPC prehearing reviewer computed Vaughn's total point score as +3 points.[1] (Id. Ex. 3 at 34.) On July 27, 2015, a USPC hearing examiner conducted Vaughn's initial parole hearing and recommended a point score of +2 points, modifying the pre-hearing assessment by awarding Petitioner a point for program achievement because he has worked as an orderly and has participated in GED, parenting II, anger management and drug education courses. (Id. Ex. 4 at 37.) Notwithstanding this score, the hearing examiner recommended denial of parole, finding

---

[1] If the total point score is two or less at the initial hearing, the prisoner will ordinarily be granted parole. (Doc. No. 14 at 4.) If the total point score is three or more at the initial hearing, parole will ordinarily be denied and set for a rehearing. (Id.)

that Vaughn needed "programming in order to remain crime-free in the community" and that his

"serious negative institutional behavior" made him unsuitable for parole release. (Id. at 37.)

On August 5, 2015, an Executive Reviewer reviewed the recommendations of the hearing

examiner and disagreed with the hearing examiner's computation of the total grid score, stating:

> I disagree with the total grid score of 2 and recommend we score him as 3 . . . Any one of his 7 DHO infractions could count as a negative point. Two of his infractions were for a stabbing another inmate . . .
>
> Regarding his program participation, the education transcript reflects non-compliance with GED requirements and no programs since 2012. He was housed at the ADX in Florence for 3 years (2000 to 2012). A comment in the progress report dated 3-30-15 indicates he was unsuccessfully discharged from the CODE program in 2004 due to non-compliance. I listened closely to the hearing to see how the program participation was described. He claimed he had participated previously in GED, Parenting, Anger Management, and drug education, but he did not provide any dates or certificates. Again, the latest progress report indicates there is a unit team recommendation for Anger Management, but no indication of completion. His work assignment is Unit Orderly, but this by itself does not justify a program point for sustained program achievement. There is no indication of any vocational or psychology based programming. I recommend the Commission deny this point, which will make his total grid score 3.

(Id. at 38.) The USPC adopted the recommendation, denied Vaughn parole and set a rehearing

in 36 months. (Id. Exs. 5 and 6.)

Vaughn challenges the denial of parole, claiming that the USPC violated his rights under

the Ex Post Facto and Due Process clause by failing to apply the 1987 Regulations and 1991

Guidelines during his initial parole hearing, and that the completion of a drug treatment program

qualifies him to receive a one-point reward for program achievement. (Doc. No. 10.)

## II.    LEGAL STANDARD

It is well established that determination of eligibility for parole for a District of Columbia prisoner has been committed by Congress to the discretion of the USPC.  United States v. Addonizio, 442 U.S. 178, 189 (1979); Campbell v. USPC, 704 F.2d 106 (3d Cir. 1983); Dorsey v. USPC, Civ. No. 5-1300, 2005 WL 1683658 at *2 (M.D. Pa. July 19, 2005).  It is equally settled that "there is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979).  Because the Constitution itself does not create any liberty interest in parole, such an interest must emanate from state law, or in this case, District of Columbia law.  Id.  Courts have consistently held that the District of Columbia parole statutes, which apply to D.C. Code offenders even after they are transferred to the jurisdiction of the USPC, does not create any liberty interest in parole.  See, e.g., McRae v. Hyman, 667 A.2d 1256 (D.C. 1995) (holding that the District of Columbia parole statute and regulations do not create any liberty interest in parole).  However, "[a] legislative grant of discretion does not amount to a license for arbitrary behavior."  Block v. Potter, 631 F.2d 233, 235 (3d Cir. 1980).  "[T]he Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."  Foucha v. Louisiana, 504 U.S. 71, 80 (1992) (internal quotation omitted).

## III.    DISCUSSION

### A.  No Ex Post Facto Violation

The Ex Post Facto Clause of the United States Constitution prohibits retroactive increases in punishment for a crime after its commission. See U.S. Const. art. I, § 9, cl. 3; Collins v. Youngblood, 497 U.S. 37, 42-43 (1990).  It is meant "to assure that legislative Acts give fair

4

warning of their effect and permit individuals to rely on their meaning until explicitly changed." Weaver v. Graham, 450 U.S. 24, 28-29 (1981). The Supreme Court has held that a retroactively applied parole regulation, guideline, or policy statement may violate the Ex Post Facto Clause if it creates "a significant risk" of "a longer period of incarceration than under the earlier rule." Garner v. Jones, 529 U.S. 244, 255 (2000).

It is clear from the record that the USPC considered Vaughn for parole under the 1987 Guidelines during his initial parole hearing on July 27, 2015. (Doc. No. 14 Ex. 6.) The USPC's Notice of Action specifically stated that "[t]he Commission applied the 1987 guidelines to the initial decision in [Petitioner's] case." As argued by Respondent, there is "no indication that the USPC applied retroactive guidelines in making its decision." (Doc. No. 14 at 10.) The Court agrees. Because the USPC applied the proper 1987 Guidelines and not some other unspecified retroactive guideline in rendering its parole decision, the Court will deny Petitioner's Ex Post Facto claim.

### B. Vaughn Does Not Have a Liberty Interest in Parole Release

Petitioner's eligibility for parole is governed by the District of Columbia's parole statute and regulations. The statute provides:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violation of the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence as the case may be, the Board *may* authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C. Code Ann. § 24-404(a) (emphasis added). The USPC made its decision by reference to the 1987 guidelines. (Doc. No. 14 at Ex 6). Irrespective of whether the 1987 guidelines indicated that a prisoner's parole should be granted or denied based upon a certain total point score, the

USPC retained the discretion to reach a different decision if merited by "unusual circumstances."

D.C. Mun. Regs. § 204.22.   For instance, there are numerous aggravating and mitigating factors

that may justify a departure from the outcome dictated by the prisoner's total point score.  See

1987 Regs. §§ 200.1, 204.22, 205.1-.4 & Apps. 2-1, 2-2; Policy Guideline 4-9.[2]  Where the

parole granting entity - USPC - exercises its discretion to disregard the total point score, it need

only "specify in writing the factors which it used to depart from the strict application of the

provision of [the regulations]."  1987 Regs. § 204.22.  See Taylor v. Craig, Civ. No. 5-781, 2009

WL 900048, at *9 (S.D.W. Va. Mar. 24, 2009).

> In this case, the USPC denied parole, concluding that:

> > After consideration of all factors and information presented, the Commission finds that there is a reasonable probability you will not obey the law and that your release would endanger the public. Specifically, you are a more serious risk than your point score based on your serious negative institutional behavior.  You have a total of 7 DHO infractions that included two separate incidents where you stabbed another inmate.  In the 2007 incident, you stabbed another inmate 30 times.  In the 2005 incident, you also stabbed another inmate.  You have also been cited for drug/alcohol possession.   You admitted to being under the influence of drugs/alcohol during the base offense on 11-10-1995, where you shot and killed a male victim.   You have not completed any residential substance abuse treatment since your incarceration began.  Further, you have not completed your GED and you are currently not enrolled in the program.  Consequently, you remain a risk to the community and additional time should be served until your next hearing to monitor your program participation and institutional conduct.

(Id. Ex. 6.)

---

[2] Appendix 2-1 lists a number of reasons for denying parole despite a low total point score, including: (1) repeated failure under parole supervision; (2) lengthy history of criminally related alcohol abuse; (3) history of repetitive sophisticated criminal behavior; (4) unusually extensive and serious prior record; (5) unusual cruelty to victims; (6) has engaged in repeated or extremely serious negative institutional behavior; and (7) needs program and/or rehabilitation services. App. 2-1, at 2-35.

The function of judicial review on a petition for writ of habeas corpus in the parole

context is to determine whether the Commission abused its discretion. Furnari v. Warden, 218

F.3d 250, 254 (3d Cir. 2000). "Since a discretionary decision of the Parole Board denying an

inmate early parole does not implicate any constitutionally [or state] protected liberty interest,

the scope of federal judicial review of these decisions is necessarily quite limited." Diehl-

Armstrong v. Pa. Bd. of Prob. & Parole, No. 13-2302, 2014 WL 1871509, at *5 (M.D. Pa. May

7, 2014). The role of a federal court is confined to reviewing the substance of the state parole

decision to determine whether the Parole Board exercised its authority in an arbitrary and

capricious, or constitutionally impermissible manner. Block v. Potter, 631 F.2d 233, 236 (3d

Cir. 1980). "[F]ederal courts are not authorized by the due process clause to second-guess parole

boards and the requirements of substantive due process are met if there is some basis for the

challenged decision." Coady v. Vaughn, 251 F.3d 480, 487 (3d Cir. 2001)

In the instant case, the USPC based its decision to deny Vaughn parole on his violent

institutional misconduct, and his failure to participate meaningfully in educational programming

or programming directed at risk-mitigation. (Doc. 14 Ex. 6.) The USPC is afforded wide

discretion in making the necessary evaluation. United States v. Addonizio, 442 U.S. 178 (1979);

Campbell v. USPC, 704 F.2d 106 (3d Cir. 1983). The Court finds that the USPC articulated a

rational basis for its determination to deny Vaughn parole and did not abuse its discretion.

Finally, to the extent that Vaughn believes he is entitled to a one-point reward for

completing a drug program, his argument lacks merit. The regulations "explicitly authorize the

Board to disregard the numerical guidelines simply by referring to 'the specific aggravating or

mitigating factors as stated in Appendices 2-1 and 2-2." Ellis v. D.C., 84 F.3d 1413, 1419 (D.C.

Cir. 1996); see also McRae v. Hyman, 667 A.2d 1356, 1360-61 (D.C. 1995) (providing that the

"Board is not required to either grant or deny parole based upon the [total point] score attained"); Price v. Barry, 53 F.3d 369 (D.C. Cir. 1995) (stating that a prisoner's low total point score does not "compel[] the Board to grant a prisoner release"). Rather, the regulations permit the Board to deviate from the outcome suggested by the total point score "in unusual circumstances," by referring to aggravating or mitigating factors. See D.C. Mun. Regs. §204.1 and .22.

For instance, in Ellis, the plaintiff was sentenced to 18-75 years for abducting and brutally raping women. Ellis 84 F.3d at 1419. In the two years preceding his initial parole hearing, plaintiff avoided any disciplinary infractions while in prison, completed his GED, completed a drug alcohol abuse treatment program, and several other self-help programs. Id. He received a total point score of +1, ostensibly entitling him to parole. Id. However, the Board denied parole, relying in part on one of the aggravating factors in Appendix 2-1. Id.

In this case, it is insignificant as to whether Vaughn was accorded a point for the completion of a drug program, thereby bringing his total point score to +2, because the USPC relied on his serious negative institutional behavior, his failure to complete his GED and to participate in programming directed at risk-mitigation in denying parole. (Doc. 14 Ex. 6.) Consequently, the USPC had ample support for its conclusion and this claim is without merit.[3]

IV.    CONCLUSION

For the foregoing reasons, Vaughn's habeas corpus petition and amended petition (Doc. Nos. 1, 10), will be denied. An appropriate Order follows.

---

[3] The Court notes that in Vaughn's original petition he claimed that the hearing examiner did not consider a parole packet that he submitted which would have demonstrated he completed his GED and Drug Education Class. (Doc. No. 1 at 1, 2.) As noted by Respondent, Vaughn's assertion that he completed his GED is not supported by the official documents created by the Bureau of Prisons. (Doc. No. 6 Ex. 2 at 2.) Moreover, as articulated previously, the USPC provided ample support for its conclusion to deny Vaughn parole.